**STATE of South Dakota, Plaintiff and Respondent,**

v.

**Thomas RAUSCHER, Defendant and Appellant.**

**No. 12012.**

Supreme Court of South Dakota.

Argued April 29, 1977.

Decided July 6, 1978.

Clair B. Ledbetter, Asst. Atty. Gen., Pierre, for plaintiff and respondent; William J. Janklow, Atty. Gen., Pierre, on the brief.

William J. Klimisch, of Goetz, Hirsch, Haar & Klimisch, Yankton, for defendant and appellant.

DUNN, Chief Justice (on reassignment).

Defendant was tried by a jury upon two counts of third degree burglary allegedly committed in rural Yankton County on November 12, 1975. A witness for the state, Randall Friesen, testified that he committed the burglaries, but he also implicated the defendant as an accomplice. Defendant was convicted as charged after a jury trial.

Defendant appeals, contending that the testimony given by the accomplice Friesen was not corroborated by such other evidence as tended to connect the defendant with the commission of the offense alleged in either count of the information. We affirm.

Friesen, an admitted accomplice who had been granted immunity from prosecution, testified in substance as follows: that he had known the defendant for ten to fifteen years; that he spent the afternoon of November 12, 1975, at Jerry Jensen's farm; that he (Friesen) had driven his own truck to the farm located eight miles north of Yankton on Highway 81; that he saw the defendant and Jack Beene arrive at the Jensen farm in a red and white Chevy

pickup at about 8 or 9 p. m.; that Jerry Jensen and Larry Gallagher were also present at the farm; that he, Jack Beene and the defendant went to Yankton at about 10 p. m. that evening in the red and white Chevy pickup; that Beene had borrowed the pickup from Steve Ellis earlier in the day; that he left his own pickup at Jensen's farm when he went to town with Beene and the defendant; that when they arrived in Yankton they stopped at defendant's vehicle to get a tire iron; that they drove around for awhile and then stopped at the Super Valu store where they were seen by Gary Rauscher and Larry Parrish; that he, Beene and defendant then proceeded to the Keller Construction site, broke into two trailers and took all the tools they could carry back to the truck; that they went north for one-fourth to one-half mile and unloaded those tools into the ditch; that they then proceeded to Pochop's garage where the defendant broke a window, crawled in and opened the front door; that they loaded all the tools into the pickup which Beene had driven to the building; that they returned to Jensen's farm and had a beer with Larry Parrish, Gary Rauscher and Jerry Jensen; that defendant, Beene and Friesen put the tools in Friesen's truck, and Friesen went to Sioux Falls; that he brought the tools back to Yankton when Beene had called to tell him that there would be no trouble if the tools were returned; that he put one set of tools in a field south of Wakonda and the other set about four miles east of Volin; that about four or five weeks after the alleged burglary, he was visited by defendant and Beene at his apartment and had a discussion concerning the alleged burglaries.

The state presented two witnesses—Rolland Pochop and Russell Olson—who testified as to the commission of the burglaries. Rolland Pochop testified that the garage he and Dan Frank rented had been broken into and tools were stolen. Russell Olson, the general contractor at the Keller Construction site, testified that two trailers had been broken into and tools stolen.

Diane Wiker testified for the state and stated that the defendant and Beene had visited Friesen at the apartment he shared with her. She testified that there was not much talk about the actual theft but that Beene and the defendant appeared to be very nervous. She testified that the conversation was about charges pending against Friesen and Beene. She remembered the defendant saying nothing except that he had spent enough time in jail.

Steve Ellis testified that he loaned Beene a truck in November of 1975, and that he helped retrieve the tools taken from the Pochop garage by contacting Beene.

Jerry Jensen testified that he was living on a farm eight miles north of Yankton in November 1975; that when Friesen was at the farm, defendant and Beene came in Steve Ellis' pickup; that although defendant, Beene and Friesen left the house together about 10 p. m., he did not know if they left in the same or separate trucks, but his roommate said that both trucks were gone; and that he did not see Friesen again that evening.

Defendant's main contention is that the testimony by the accomplice Randall Friesen was not corroborated by such other evidence as tended to connect the defendant with the commission of the burglaries.

SDCL 23–44–10 provides:

"A conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the offense, and the corroboration is not sufficient if it merely shows the commission of the offense, or the circumstances thereof."

No objections or exceptions were taken to the instructions of the trial court, and we must therefore assume that the jury was fully and properly instructed as to the necessity of corroboration of and the weight to be given Friesen's testimony. *State v. Beene,* 1977, S.D., 257 N.W.2d 589; *State v. Drapeau,* 45 S.D. 507, 189 N.W. 305.

SDCL 23–44–10 does not require that corroborative evidence be produced which, by itself, would sustain a conviction. *State v. Stecker,* 79 S.D. 79, 108 N.W.2d 47; *State v. Hicks,* 6 S.D. 325, 60 N.W. 66. The rule is satisfied if such evidence in some substantial degree (1) tends to affirm the

truth of the testimony of the accomplice, and (2) tends to establish the guilt of the defendant. *State v. Levers,* 12 S.D. 265, 81 N.W. 294; *State v. Walsh,* 25 S.D. 30, 125 N.W. 295; *State v. Drapeau,* supra; *State v. Stecker,* supra. Circumstantial evidence may be sufficient to corroborate the testimony of an accomplice, *State v. Willers,* 75 S.D. 356, 64 N.W.2d 810, but if a circumstance is as consistent with innocence as with guilt, then it cannot be held to corroborate the testimony given by the accomplice. *State v. Odle,* 45 S.D. 575, 189 N.W. 515. It is the duty of the trial court to first determine whether or not any evidence has been introduced that corroborates the testimony of the accomplice. Where such evidence of corroboration appears, its weight, credibility, and sufficiency is for the jury. *State v. Stecker,* supra; *State v. Walsh,* supra.

■ The one clear circumstance which corroborates Friesen's testimony is found in Jerry Jensen's statement that the defendant and Friesen left the Jensen farm house, which was located eight miles from the site of the burglaries, at approximately the same time on November 12, 1975. This departure was about thirty minutes prior to the burglaries. In *State v. Drapeau,* supra, this court stated the following general rule:

" 'The fact that at or about the time of the commission of the offense with which defendant is charged he and the accomplice were together in apparent intimacy in the neighborhood of the place where the crime was committed may sufficiently connect the defendant with the commission of the crime to furnish the necessary corroboration of the accomplice.' " 45 S.D. at 513, 189 N.W. at 306.

Further corroboration is found in Diane Wiker's testimony concerning a conversation involving Beene, Friesen and the defendant. Friesen had testified about this conversation as follows:

"Well, they talked to me for awhile and they told me that they were warned they weren't supposed to come threaten me or anything like that, and Tommy (Rauscher) made a statement to me saying that if he was going to go to the pen again, it wasn't going to be for burglary."

Diane Wiker testified that the day Beene got out of jail he and the defendant came to Friesen's apartment and both appeared to be nervous and afraid. She recalled the following bits of conversation in her testimony:

"A. Okay. Jack (Beene) asked why, or he had heard something about Randy said that Jack would hear about it. And Jack said something about he had seen a written statement, I believe.

"Q. By whom?

"A. At the Police station by Randy.

"Q. Did Randy reply to that?

"A. Yes. He said no, that he hadn't made any statement and that he didn't intend to, at that time.

"Q. Do you remember anything else being said?

\* \* \* \* \* \*

"A. Okay. I'm sorry. Jack said he did most of the driving. I really don't remember a whole lot more. I don't remember Tom (Rauscher) saying anything except for the fact that he had spent enough time in jail."

Here we have the defendant, Beene and the accomplice together again discussing the investigation that was going on as to this crime. Diane Wiker's testimony can logically be seen as corroborative of Friesen's testimony that Beene and the defendant were concerned that Friesen might testify against them. The defendant's failure to incriminate himself in the commission of the crime during the course of this conversation can be taken as admission by silence, since it can be expected that an innocent person sitting in on such a conversation would declare his innocence. McCormick on Evidence, (2d Ed.), § 270, pp. 651–655.

A final corroborative factor is the fact that the defendant's two alleged alibi witnesses were talking with police in connection with another matter at the time the defendant claimed that they were with him. Several police officers testified that they knew the defendant and that he was not in the company of the two alleged alibi witnesses. All of these factors tend to corroborate the accomplice's testimony and are

sufficient evidence on which to uphold defendant's conviction.

The judgment is affirmed.

WOLLMAN and MORGAN, JJ., concur.

PORTER, J., concurs specially.

ZASTROW, J., dissents.

PORTER, Justice (concurring specially).

Friesen testified that he, defendant, and Jack Beene were involved in the burglaries. In deciding whether to credit the accomplice's testimony against defendant, the jury were entitled to consider not only the specific evidence cited by the majority but also the corroborative evidence against Beene, since Beene and defendant left the farmhouse and drove away together shortly before the burglaries. Beene's implication tends to implicate defendant and thus serves as corroboration of the accomplice's testimony. On that basis, I concur in the affirmance of defendant's conviction.

ZASTROW, Justice (dissenting).

I dissent.

The majority relies upon the rule of law stated in *State v. Drapeau*, 1922, 45 S.D. 507, 189 N.W. 305 that "apparent intimacy in the neighborhood of the place where the crime was committed" may be sufficient to corroborate an accomplice's testimony. The facts in support of this proposition are said to be Jensen's testimony that the defendant and Friesen had been at his farm and had walked out the front door at "approximately" the same time. The evidence of "intimacy"—i. e., friendship or acquaintance—is Friesen's own testimony. No one saw them leave Jensen's farm together and there is no evidence of anything but a mutual acquaintance with Jensen. To prove intimacy, something more than a mere association must be shown for corroboration. 23 C.J.S. Criminal Law § 812(4)g. Furthermore, mere presence near the scene is not sufficient corroboration unless accompanied by suspicious circumstances. 23 C.J.S. Criminal Law § 812(4)f. Drinking beer at a friend's home is hardly suspicious behavior.

The only other evidence for corroboration is Diane Wiker's testimony about a conversation between Friesen, Beene and the defendant. The defendant has said very little except for making the rather ambiguous statement that "he had spent enough time in jail." At that time only Friesen and Beene had been charged with burglary. There is no evidence that Rauscher had even been implicated at that time. There is nothing in Diane Wiker's testimony to indicate that defendant was concerned about Friesen's testimony, since he had not yet even been arrested. Beene's rather vociferous statements and admission of doing the "driving" can hardly be implied to the defendant to connect him to the commission of the crime. Likewise the defendant's silence would hardly seem to be an admission under the circumstances, since he had not yet been accused of the burglary.

The fact that the defendant's alibi witnesses were not with the defendant at all times during the night in question seems hardly the type of evidence to connect the defendant with the crime. The burden is upon the state to produce the evidence to connect him with the crime; it is not the burden of the defendant to prove he was not at the scene.

I think that the facts of *State v. Drapeau* were much more corroborative than here—for instance: the defendant there was in the company of the accomplice when he attempted to borrow a gun to "go rob a woman of $200"; the defendant was with the accomplice when he tried to borrow a gun from another friend; one and a half hours before the robbery, the defendant's wife observed the accomplice show her husband the gun; and during the robbery, the victim heard one robber refer to the other as "Ray," the defendant's first name.

It appears that the corroborating evidence against Beene is being used against the defendant who is found guilty for his association not with Friesen, but with Beene.